**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X
EDWARD B. HUBBUCH,

                               Plaintiff,

                -against-

J&M REALTY SERVICES CORP., *et al.*,

                           Defendants.
--------------------------------------------------------------------X

**25 Civ. 7642 (JPO) (GS)**

**OPINION & ORDER**

**GARY STEIN, United States Magistrate Judge:**

Plaintiff Edward B. Hubbuch ("Plaintiff" or "Hubbuch"), proceeding *pro se*, brings this action against Defendants J&M Realty Services Corp. ("J&M), a real estate managing agent, Jerry Edelman, and David Edelman (the "J&M Defendants"); Davidoff Hutcher & Citron LLP ("DHC"), a law firm, and Benjamin Noren ("Noren"), a lawyer at DHC (the "DHC Defendants"); the City of New York ("City"); and George Essock Jr. ("Essock"), a New York City Marshal (collectively "Defendants"). Hubbuch asserts claims arising out of a commercial lease Hubbuch entered into for his restaurant business, his subsequent eviction from the premises, and related legal proceedings. (Dkt. Nos. 1, 31).

After Plaintiff filed his initial Complaint (Dkt. No. 1 ("Complaint" or "Compl.")), Noren entered an appearance on behalf of the J&M Defendants and DHC. (Dkt. Nos. 13-14). Prior to then-Defendants' time to answer or otherwise respond to Plaintiff's Complaint, Hubbuch moved to disqualify Noren and the

DHC firm from representing the J&M Defendants or DHC in this action. (Dkt. No. 17-18). Following briefing from all then-present parties on the issue, Hubbuch withdrew his motion to disqualify Noren. (Dkt. No. 28). Hubbuch stated that this withdrawal was "prompted by the discovery of new, highly material facts . . . concerning the legal representation of multiple parties in this action," which "necessitate[d] a substantial revision of the pleadings." (*Id.*).

Soon thereafter, Hubbuch filed his First Amended Complaint (Dkt. No. 31 ("FAC")), which added Noren as a Defendant as well as the City. The FAC contains allegations that the law firm representing Essock in this case, Cornicello, Tendler & Baumel-Cornicello, LLP ("CTBC"), previously represented the property owner who benefited from Essock's eviction of Hubbuch. (FAC ¶¶ 106, 124). On November 13, 2025, Plaintiff moved to disqualify both DHC from representing the J&M Defendants and CTBC from representing Essock. (Dkt. No. 40).

For the reasons set forth below, Hubbuch's motion is **DENIED** in its entirety.

## BACKGROUND

### A. Plaintiff's Allegations

Hubbuch is the sole proprietor of Memphis Seoul, a restaurant specializing in Southern and Korean cuisine. (FAC ¶ 8). On October 15, 2022, Hubbuch's entity, Tasteland Holdings LLC d/b/a Memphis Seoul, which later changed its name to Memphis Seoul No. 2 LLC ("Memphis Seoul"), entered into a lease agreement for

2

premises located at 123 First Avenue in Manhattan (the "Lease").  (*Id.* ¶¶ 8, 17 &

Ex. A).  Defendant J&M was designated under the Lease as the landlord's primary

contact and functioned as the on-site property manager and leasing agent.  (*Id.* ¶

18).  Jerry Edelman is J&M's principal owner, and David Edelman, his son, also

participated in certain of the events at issue.  (*Id.* ¶¶ 10-11).  Hubbuch claims the

J&M Defendants acted as "*de facto* landlords" during his tenancy.  (*Id.* ¶ 19).

Hubbuch alleges that the J&M Defendants fraudulently induced him to enter

into the Lease by, *inter alia*, concealing numerous utility and code-compliance

issues at the property.  (*Id.* ¶¶ 24-26).  These misrepresentations resulted in

Plaintiff having to engage in extensive, costly, and ultimately fruitless efforts to

restore gas service and bring the premises into compliance.  (*Id.* ¶ 39).  After

Memphis Seoul fell into arrears on its rental payments, the landlord, Lunar Estates

LLC ("Lunar"), sued Memphis Seoul in Manhattan Housing Court.  (*See id.* ¶ 21 &

Ex. C).  The lawsuit was ultimately resolved through a Stipulation of Settlement

("Stipulation") in February 2024 that required ongoing payment of arrears by

Memphis Seoul.  (*Id.* ¶¶ 21-22 & Ex. C).

After Memphis Seoul allegedly breached its obligations under the

Stipulation, Lunar obtained a decision from the Housing Court authorizing eviction

of Memphis Seoul from the premises.  (*Id.* ¶ 57 & Ex. G).  On July 18, 2024,

Defendant Essock executed a warrant of eviction at the premises, accompanied by

David Edelman.  (*Id.*).  Hubbuch alleges that the eviction occurred earlier than he

was led to believe by Essock's office.  (*Id.* ¶ 58).  As a result, Hubbuch was not

present for the eviction, and his employees were given only 20 minutes to leave. (*Id*. ¶¶ 58-59).  Items of property essential to Hubbuch's business were left behind, seized, and retained by the J&M Defendants, who refused to return the property unless Hubbuch surrendered his legal rights and paid disputed sums.  (*Id*. ¶¶ 59-65).

Hubbuch thereafter commenced a *pro se* action on behalf of Memphis Seoul in Manhattan Small Claims Court against J&M, alleging that J&M had unlawfully failed to return the property.  (*Id*. ¶ 85 & Ex. J).  J&M hired DHC as counsel in that action.  (*Id*. ¶ 84).  Noren was the DHC lawyer who handled the matter.  (*Id*.).  On August 6, 2024, Memphis Seoul and J&M entered into a settlement agreement, which was negotiated between Hubbuch and Noren (the "August 2024 Settlement Agreement").  (*Id*. ¶¶ 85-92 & Ex. L).

Under the August 2024 Settlement Agreement, J&M agreed to return Memphis Seoul's property, in exchange for which Hubbuch agreed to dismiss the action he brought in Small Claims Court and to remove an Instagram post critical of J&M.  (*Id*. ¶ 92).  Hubbuch alleges that the Agreement was "a willfully coercive instrument" drafted by Noren in violation of the New York Rules of Professional Conduct and that Hubbuch entered into the Agreement "under extreme duress" while being "unrepresented, financially distressed, and facing the permanent loss of proprietary business assets."  (*Id*. ¶¶ 88, 92, 93, 95, 135).

On September 14, 2025, Plaintiff filed the present case, asserting that all Defendants except the City acted in concert to violate his procedural due process

4

rights under 42 U.S.C. § 1983 by seizing his property and imposing coercive conditions for its return.  (*Id.* ¶¶ 111-17).  Hubbuch asserted eight additional causes of action against the J&M Defendants, DHC, and Noren for a declaratory judgment invalidating the August 2024 Settlement Agreement and for damages based on conspiracy, fraudulent inducement, commercial tenant harassment in violation of New York City Administrative Code § 22-902, conversion, deceptive practices in violation of New York General Business Law § 349, breach of the implied covenant of good faith and fair dealing, and tortious interference with prospective economic advantage.  (*Id.* ¶¶ 126-76).

In addition, Hubbuch added a claim against the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  (*Id.* ¶¶ 118-25).  In particular, Hubbuch alleges that the City failed to adequately supervise, train, and discipline City Marshals such as Essock, allowing a "pattern of misconduct to continue unchecked," which ultimately led to the harms Hubbuch alleges.  (*Id.* ¶ 121-22).

## B. Plaintiff's Initial Disqualification Motion

On October 23, 2025, the same day that the J&M Defendants and DHC were granted an extension to December 12, 2025 to respond to the Complaint (Dkt. No. 17), Plaintiff filed his first motion to disqualify Noren and DHC from representing the J&M Defendants and DHC in this action.  (Dkt. No. 18).  Accompanying the

motion were a memorandum of law (Dkt. No. 19 ("Pl. Initial Br.")) and a declaration from Hubbuch (Dkt. No. 20 ("Pl. Initial Decl.")).

Plaintiff argued that Noren's and DHC's representation violated New York Rules of Professional Conduct ("RPC") 1.7 (Conflict of Interest: Current Clients) and 3.7 (Lawyer as Witness). (Pl. Initial Br. at 3). Plaintiff argued that because Noren and DHC acted as counsel in the Small Claims Court action and drafted the underlying August 2024 Settlement Agreement that this case seeks to invalidate, Noren is a necessary fact witness on contested issues requiring his disqualification under Rule 3.7. (*Id*. at 3-4). In addition, Plaintiff argued that Noren's and DHC's prior representation posed a non-waivable conflict under Rule 1.7 as to the J&M Defendants, whose best defense, according to Plaintiff, is their reliance on Noren's legal advice. (*Id*. at 5). Plaintiff further argued that Noren and DHC must be disqualified under Rule 1.7 because their interests in protecting themselves from personal liability would inevitably compromise their judgment in representing the J&M Defendants, and that this conflict was so severe that it could not be waived. (*Id*. at 5-6).

On October 24, 2025, the J&M Defendants and DHC filed a brief, submitted by Noren, opposing Plaintiff's motion. (Dkt. No. 22 ("Def. Initial Br.")). On October 25, 2025, Plaintiff submitted a reply brief (Dkt. No. 27 ("Pl. Initial Reply")) and a supplemental declaration claiming that Noren and DHC had retained malpractice counsel for this case, further demonstrating that a conflict exists between DHC and the J&M Defendants (Dkt. No. 24 ("Pl. Supp. Decl.")). Noren responded in a letter

on October 27, 2025, claiming that Plaintiff is incorrect and that he had retained no malpractice attorney for this case.  (Dkt. No. 26 ("Def. Supp. Ltr.")).  Plaintiff submitted a letter the same day disputing the credibility of Noren's explanation. (Dkt. No. 27 ("Pl. Supp. Ltr.")).

On November 4, 2025, Plaintiff submitted another letter withdrawing his initial motion.  (Dkt. No. 28).  Plaintiff wrote that the withdrawal was "prompted by the discovery of new, highly material facts . . . concerning the legal representation of multiple parties in this action," which "necessitate[d] a substantial revision of the pleadings."  (*Id.*).  Hubbuch indicated he would soon file an amended complaint which would "render the specific issues in the pending motion moot through the inclusion of new parties and additional causes of action."  (*Id.*).

The following day, attorney David Tendler of CTBC entered an appearance on behalf of Defendant Essock.  (Dkt. No. 29).  One day later, on November 6, 2025, Hubbuch filed his amended complaint.  (Dkt. No. 31).  On November 12, 2025, attorney Larry Hutcher of DHC entered an appearance on behalf of DHC, Noren, and the J&M Defendants.  (Dkt. No. 37).  Although Noren was named a Defendant, he has not withdrawn from his role as attorney for the J&M Defendants or DHC.

## C.  Plaintiff's Present Disqualification Motion

Just one day later, on November 13, 2025, Hubbuch filed the instant motion, seeking to disqualify DHC from representing the J&M Defendants and to disqualify

CTBC from representing Essock (Dkt. No. 40), a memorandum of law in support (Dkt. No. 41 ("Pl. Br.")), and his declaration in support (Dkt. No. 42 ("Pl. Decl.")).

On November 18, 2025, the J&M Defendants and DHC Defendants (collectively, the "J&M and DHC Defendants") filed a joint opposition. (Dkt. No. 49 ("DHC Br.")). The following day, Hubbuch submitted his reply memorandum in support of the instant motion. (Dkt. No. 51 ("Pl. DHC Reply")).

On November 26, 2025, Essock filed his opposition. (Dkt. No. 54 ("CTBC Br.")). Again, on the following day, Hubbuch submitted his reply memorandum in support of the instant motion. (Dkt. No. 57 ("Pl. CTBC Reply")). After Hubbuch raised new issues about CTBC attorney Marc Monte in his reply, Essock sought leave to file a sur-reply to clarify these issues. (Dkt. No. 58). While the Court declined to hear additional argument on that issue, it granted Essock leave to file a sur-reply on the issue of whether CTBC should be disqualified on other grounds first raised in Hubbuch's reply. (Dkt. No. 59). Accordingly, Essock filed his sur-reply on December 8, 2025. (Dkt. No. 60 ("CTBC Sur-Reply")).

As to DHC, Hubbuch argues that the firm is prohibited as a whole from acting as counsel for the J&M Defendants under RPC Rule 1.7. (Pl. Br. at 3). Hubbuch alleges that "the most logical and potent defense available to the [J&M] Defendants is to assert good-faith reliance upon the advice of their legal counsel," DHC, and thus, DHC's representation will involve the "assertion of a claim by one client against another client represented by the lawyer in the same litigation." (*Id.* at 3-4). Additionally, Hubbuch alleges that CTBC is prohibited from representing

8

Defendant Essock under RPC Rules 1.7, 1.9, and 3.7. (*Id.* at 7; Pl. CTBC Reply at 10-11).

As to CTBC, Hubbuch notes that the firm previously represented Lunar, the landlord, in the underlying eviction action, allegedly creating an ethical conflict between CTBC's present client, Essock, and its former client, Lunar. (Pl. Br. at 7-9). Hubbuch implies that Lunar is paying Essock's legal fees, and that CTBC "cannot be a zealous advocate for one client when his paycheck is signed by an adverse party with a vested interest in controlling the narrative." (*Id.*). Finally, Hubbuch argues that all of CTBC's lawyers are barred as necessary fact witnesses, as their role in representing the landlord during the eviction action requires their testimony in the present case. (Pl. CTBC Reply at 10-11).

Both sets of defendants deny Hubbuch's allegations and seek to maintain their respective representations.

## LEGAL STANDARDS

"'The question of whether to disqualify counsel is solely within the Court's discretion.'" *Hreish v. Pappas*, No. 24 Civ. 2284 (JHR) (BCM), 2025 WL 1653841, at *5 (S.D.N.Y. June 10, 2025) (quoting *Brooks v. Knowledge Eng'g Inc.*, No. 89 Civ. 4478 (SS), 1994 WL 121851, at *2 (S.D.N.Y. Apr. 7, 1994) (Sotomayor, J.)). "The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citation omitted). "A motion to disqualify counsel is a non-dispositive matter within the

9

scope of a magistrate judge's authority pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a)." *Hreish*, 2025 WL 1653841, at *5 n.8 (citing *Heard v. Statue Cruises LLC*, No. 16 Civ. 1079 (ALC) (BCM), 2020 WL 1285456, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) (collecting cases)).

In exercising its discretion on a motion for disqualification, the court must "balance 'a client's right freely to choose his counsel' against 'the need to maintain the highest standards of the profession.'" *Hempstead Video*, 409 F.3d at 132 (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)). Although disqualification decisions are often informed by the applicable rules of professional conduct, "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Id.* Disqualification is warranted only "in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'" *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010) (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)).

Parties seeking disqualification "must meet a 'heavy burden of proof in order to prevail.'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 419 (S.D.N.Y. 2015) (quoting *Gormin v. Hubregsen*, No. 08 Civ. 7674 (PGG), 2009 WL 508269, at *2 (S.D.N.Y. Feb. 27, 2009)). "'[M]ere speculation will not suffice.'" *Gormin*, 2009 WL 508269, at *2 (quoting *NL Indus., Inc. v. PaineWebber, Inc.*, No. 88 Civ. 8602 (MBM), 1990 WL 43929, at *1 (S.D.N.Y. Apr. 9, 1990)). "Motions to disqualify counsel are subject to strict scrutiny because of their potential to be used

10

for tactical purposes." *Cohen v. Strouch*, No. 10 Civ. 7828 (DLC), 2011 WL 1143067, at *1 (S.D.N.Y. Mar. 24, 2011) (citing *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009)). "'[E]ven when made in the best of faith, such motions inevitably cause delay' in the litigation." *Id.* (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).

## DISCUSSION

The Court first addresses Hubbuch's claim that DHC suffers from a disabling conflict of interest precluding their representation of the J&M Defendants under Rule 1.7, then addresses the same Rule and Rule 1.9 as applied to CTBC's representation of Essock. Next, the Court addresses Hubbuch's claim that CTBC requires disqualification in its entirety under Rule 3.7, and then finally addresses Hubbuch's previously advanced claim that Noren should be disqualified as a witness-advocate under Rule 3.7.

### A. Rule 1.7 as to DHC

RPC Rule 1.7, 22 N.Y.C.C.R. § 1200.0, which addresses conflicts among current clients, states in pertinent part that a lawyer "shall not represent a client if a reasonable lawyer would conclude that" either "the representation will involve the lawyer in representing differing interests" or "there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." RPC 1.7(a)(1), (2). Such a conflict is waivable, if, among other things, the lawyer "reasonably believes that [he] will be able to provide competent and diligent

11

representation to each affected client," the representation "does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation," and "each affected client gives informed consent, confirmed in writing." RPC 1.7(b). "Where, as here, [a disqualification] motion is based on RPC 1.7(a), the movant must demonstrate the existence of an actual conflict, not merely 'the possibility that future conflicts of interest may arise.'" *Hreish*, 2025 WL 1653841, at *6 (quoting *Drag Racing Techs., Inc. v. Universal City Studios, Inc.*, No. 02 Civ. 958 (BSJ) (JCF), 2003 WL 1948798, at *4 (S.D.N.Y. Apr. 24, 2003)).

The J&M and DHC Defendants first raise a threshold argument that Hubbuch cannot move to disqualify DHC for conflict-of-interest reasons as he was never a DHC client. (DHC Br. at 6). Hubbuch responds that courts "recognize standing where conflicted representation threatens the integrity of the proceedings, even absent a prior attorney-client relationship with the movant." (Pl. DHC Reply at 2). Although Hubbuch does not cite any law, because Rule 1.7 violations do, indeed, implicate the integrity of the adversarial process, defendants' standing argument is unavailing.

Although this standing argument has carried weight in some New York state court decisions (*see* DHC Br. at 6 (citing only state court decisions)), "[t]he federal courts . . . generally take the view that any party to a lawsuit may raise a potential conflict." *Muniz v. Re Spec Corp.*, 230 F. Supp. 3d 147, 154 (S.D.N.Y. 2017). A "court is under a continuing obligation to supervise the members of its Bar." *Dunton v. County of Suffolk, State of New York*, 729 F.2d 903, 909 (2d Cir. 1984)

12

(citation omitted). "Given the court's oversight obligation, a motion to disqualify an attorney, even if brought by an unaffected party, is an appropriate means by which to bring the conflict issue to the court's attention." *Adams v. Vill. of Keesville,* No. 07 Civ. 452 (LEK) (RFT), 2008 WL 3413867, at *10 (N.D.N.Y. Aug. 8, 2008). "Any lack of standing is moot, since the court should exercise its 'inherent power to preserve the integrity of the adversary process' when possible conflicts arise." *Cohen,* 2011 WL 1143067, at *4 (quoting *Hempstead Video,* 409 F.3d at 132). "However, the fact that the alleged Rule 1.7(a) conflict would not adversely affect the moving defendants may shed light on whether the motion is a 'tactical device' designed primarily to disrupt plaintiffs' case rather than to preserve the integrity of the adversary process." *Muniz,* 230 F. Supp. 3d at 154 (quoting *Scantek Med., Inc. v. Sabella,* 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008)). As such, although Plaintiff was never a DHC client, this Court will consider his conflict-of-interest argument.

Nonetheless, Hubbuch's argument fails on the merits. Plaintiff's argument that the J&M Defendants' "most logical and potent defense" is to assert good faith reliance on advice of counsel and shift "ultimate responsibility and liability onto DHC," placing DHC in the "untenable position" of having to either protect the interests of the J&M Defendants or its own interests (Pl. Br. at 4-5), is too speculative to warrant disqualification. *See, e.g., All Star Carts & Vehicles, Inc. v. BFI Can. Income Fund,* No. 08 Civ. 1816 (LDW) (AKT), 2010 WL 2243351, at *7 (E.D.N.Y. June 1, 2010) (denying motion to disqualify law firm that represented both named plaintiffs in an antitrust class action and a competitor likely to be the

13

subject of third-party discovery because "the conflict of interest raised by Defendants is too speculative at this point in the litigation to require disqualification"); *Colandrea v. Town of Orangetown,* 490 F. Supp. 2d 342, 353 (S.D.N.Y. 2007) ("[S]peculation that a party may one day decide to sue its counsel for malpractice is hardly sufficient to meet Plaintiff's burden in arguing for the drastic remedy of disqualification.").

Indeed, the J&M and DHC Defendants previously asserted that they had no plans to file any cross-claims between one another, and instead "are in agreement on a strategy to dismiss Plaintiff's claims" at least on the ground that his claims belong to Memphis Seoul and he lacks standing to bring them in his individual capacity. (Def. Initial Br. at 7-8 & n.2). And these defendants recently filed a motion to dismiss Hubbuch's FAC on standing and other grounds. (Dkt. No. 64).[1] The mere possibility of a claim between or among a group of defendants does not require disqualification of joint counsel, particularly when their interests in a common defense align at the pleading stage. *See, e.g., Muniz,* 230 F. Supp. 3d at 155 ("[T]he mere possibility of a legally cognizable claim between or among a group of jointly represented clients does not require disqualification of their counsel."); *Flaherty v. Filardi*, No. 03 Civ. 2167 (LTS) (HBP), 2004 WL 1488213, at *3 (S.D.N.Y. July 1, 2004) (fact that one defendant could potentially assert an

---

[1] Hubbuch's opposition brief to the motion filed by the J&M and DHC Defendants contends that, for various reasons, he does have standing to bring the claims asserted in this action. (Dkt. No. 67 at 2-5). The Court has not considered the merits of this issue (or any other issue raised on the motion to dismiss) and intimates no view as to which side has the stronger argument.

indemnity cross-claim against the other did not require disqualification of their joint counsel where "no cross-claims have been made, and none are anticipated to be made in the future"); *Drag Racing Techs.*, 2003 WL 1948798, at *4 (existence of potential cross-claims among jointly represented defendants did not require disqualification of their counsel where it was in their "common interest to mount a unified defense"); *Tartaglia v. City of New York*, No. 98 Civ. 5584 (JGK) (RLE), 1999 WL 151104, at *2 (S.D.N.Y. Mar. 19, 1999) (no disqualifying conflict existed between two jointly represented defendants because, "[a]s the litigation now stands, they share an interest in challenging plaintiff's allegations").

Nor is the Court persuaded by Plaintiff's argument that DHC and Noren have hired malpractice counsel for this case, "conclusively demonstrat[ing] the actual and non-waivable conflict of interest" between DHC and the J&M Defendants. (Pl. Supp. Decl. ¶ 1; *see also* Pl. Br. at 6 (alleging that Hubbuch "exposed" this conflict in his prior filings)). In support of this argument, Plaintiff points to the Electronic Court Filing ("ECF") docket notice in this case, noting that the email address "tking@hinshawlaw.com" has received ECF filings in this case for DHC. (Pl. Initial Rep. at 7; *see* Pl. Supp. Decl. ¶ 2 & Ex. A). Plaintiff connects this address to Ian A. King II, a lawyer for Hinshaw & Culbertson LLP ("H&C") who practices legal malpractice defense, among other work. (Pl. Initial Rep. at 7; *see* Pl. Second Decl. Ex. B). This email address has received filings in this case, which

Hubbuch alleges is part of Noren's broader scheme to "conceal the ongoing relationship" of Noren and malpractice counsel "from the Court." (Pl. Br. at 6).

This argument is baseless. As the exhibit Plaintiff himself provides shows, Ian King's firm biography lists a different email address—"iking@hinshawlaw.com"—from the email address receiving ECF notices in this case ("tking@hinshawlaw.com"). (Pl. Supp. Decl. Ex. B). In his October 27, 2025 letter, Noren explains that the "tking" address belongs to his former legal assistant, Tracia King, from when he worked at H&C, who is inadvertently still receiving ECF notices for his account. (Def. Supp. Ltr.). Noren further states that he has not retained Ian King or "any malpractice attorney" for this suit. (*Id.*). The Court credits these assertions, notwithstanding Plaintiff's wholly unconvincing efforts to cast doubt on them (*see* Pl. Supp. Ltr. at 1; Pl. Br. at 6).

Thus, the Court finds that no actual conflict currently exists between or among the J&M and DHC Defendants warranting disqualification of joint counsel. As such, DHC's disqualification under Rule 1.7 would be inappropriate at this time.

## B. Rules 1.7 and 1.9 as to CTBC

Hubbuch argues that CTBC should be disqualified from representing Defendant Essock because of its prior relationship as counsel for Lunar, the landlord in Hubbuch's eviction action. (Pl. Br. at 7). According to Hubbuch, if Lunar is a current client, then CTBC is violating Rule 1.7, and if Lunar is a former client, then CTBC is violating Rule 1.9. (*Id.*). Hubbuch argues that Lunar's interests are adverse to Essock's in this action, as Essock's "defense may necessarily

implicate or shift blame onto [Lunar]." (Pl. CTBC Reply at 9).  Moreover, Hubbuch

argues that it is "inconceivable" that CTBC did not acquire confidential insights

from Lunar that are relevant to the current litigation, and that the inevitable

disclosure of such information would harm Lunar.  (*Id.* at 5).  Finally, citing Rule

1.10(a), Hubbuch argues that these conflicts are imputed to all lawyers in the firm,

such that all CTBC lawyers are prevented from representing Essock, regardless of

their role, or lack thereof, in the prior representation of Lunar.  (*Id.* at 10).  The

Court finds these claims to be meritless.[2]

     As described above, the mere possibility of a claim between or among a group

of clients does not require disqualification of joint counsel; rather, the movant must

demonstrate the existence of an actual conflict.  *Hreish*, 2025 WL 1653841, at *6.

The Court finds no actual conflict here.  Hubbuch has provided no facts to suggest

that Essock would try to blame Lunar for anything he did while carrying out the

Housing Court's eviction order, or any cogent reason why Essock would do so.  For

his part, Essock makes clear that he sees "no conflict between the interests of

[himself] and non-party Lunar[.]"  (CTBC Br. at 5).  And, like the J&M and DHC

Defendants, Essock has submitted his own motion to dismiss Hubbuch's FAC,

which similarly demonstrates he has no conflict with Lunar at this time.  (Dkt. No.

---

[2] CTBC "joins in the arguments set forth" by DHC in its opposition, which would include the argument that Hubbuch lacks standing to object under Rule 1.7. (CTBC Br. at 2 n.3).  The Court rejects that argument for the same reasons given above in discussing Hubbuch's claim that DHC should be disqualified under Rule 1.7.

63).[3] Similarly, Hubbuch does not attempt to allege what "confidential insights" CTBC may have acquired from Lunar that it might wish to use to Essock's advantage here.  Here again, Hubbuch relies on pure speculation.

Further, Hubbuch argues that the appearance of CTBC attorney Marc Monte after Plaintiff's present motion evidences a conflict, as Monte's ECF notices are routed to personnel at Jacobs P.C., despite Monte not being employed at that firm. (Pl. CTBC Reply at 3).  However, as CTBC explained thereafter, Monte recently joined the firm from Jacobs P.C., and his ECF routing has not yet been updated. (Dkt. No. 58).  As with Hubbuch's similarly unfounded allegation about Ian King from H&C, Hubbuch's imagination has run ahead of the facts.  Accordingly, the Court finds no conflict has been demonstrated, and declines to disqualify CTBC under Rules 1.7 or 1.9.

### C. Rule 3.7 as to CTBC

For the first time in his Reply to CTBC's opposition, Hubbuch asserts that all CTBC lawyers must be disqualified from the present action under Rule 3.7, the witness advocate rule.  Hubbuch alleges that because CTBC lawyers represented Lunar in the eviction proceeding, he "fully intends to call" CTBC "attorneys as witnesses to establish the causal chain between the landlord's directives and

---

[3] Hubbuch also implies that Lunar is funding CTBC's representation of Essock.  (Pl. Br. at 8 (arguing that CTBC's "duty of undivided loyalty" to Essock "is structurally compromised by the reality that his fees are likely being paid by" Lunar)).  However, Hubbuch provides no evidence in support of this claim, which CTBC denounces as "unfounded."  (CTBC Br. at 6).  Accordingly, the Court finds this argument to have no merit.

[Essock's] execution of the eviction." (Pl. CTBC Reply at 11).  For the reasons set forth below, this argument, too, fails.

As an initial matter, CTBC objects to Plaintiff's argument as "untimely and requests that same be disregarded by the Court as untimely." (CTBC Sur-Reply at 1).  CTBC's position is not unfounded.  Courts in this Circuit frequently decline to consider arguments when made for the first time in a reply brief.  *See, e.g.*, *Solomon v. Sprint Corp.*, No. 19 Civ. 5272 (MKV), 2022 WL 889897, at *4 n.2 (S.D.N.Y. Mar. 25, 2022) ("[O]rdinarily the Court does not consider matters addressed for the first time in a reply brief.").

However, "[i]t is well settled that a court has wide discretion to accept or reject factual assertions and arguments made for the first time on reply." *Wells Fargo Bank, N.A. v. Watts*, No. 16 Civ. 6919 (ENV) (RER), 2020 WL 6370057, at *1 (E.D.N.Y. May 27, 2020) (collecting cases), *R&R adopted*, 2020 WL 5200903 (E.D.N.Y. Sept. 1, 2020).  And that discretion "can be exercised by either ignoring the new arguments or granting permission for a sur-reply." *Escobar v. Correa*, No. 22 Civ. 8434 (MMG), 2024 WL 4042122, at *6 (S.D.N.Y. Sept. 4, 2024).  Here, the Court granted CTBC leave to file a sur-reply on this issue (Dkt. No. 59), and utilizes its discretion to consider Hubbuch's argument on the merits.

The witness-advocate rule, set forth in Rule 3.7 of the RPC, provides, with certain exceptions, that "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." RPC 3.7(a).  Disqualification under Rule 3.7 "is 'required only when it is likely that

19

the testimony to be given by [counsel] is necessary.'" *GateGuard, Inc. v. Goldmont Realty Corp.*, 641 F. Supp. 3d 66, 70 (S.D.N.Y. 2022) (quoting *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994)). "[T]he ultimate reason for disqualification [is] harm to the integrity of the judicial system." *Murray*, 583 F.3d at 178.

Disqualification under Rule 3.7 generally occurs "only when the attorney actually serves as an advocate before the jury." *Finkel v. Frattarelli Bros.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010) (citing *Murray*, 583 F.3d at 179); *see also Interpharm, Inc. v. Wells Fargo Bank, N.A.*, No. 08 Civ. 11365 (RJH) (HBP), 2010 WL 1141201, at *5 (S.D.N.Y. Mar. 25, 2010) (noting that "numerous courts in this District have held that [the advocate-witness rule] addresses [only] counsel's participation at trial, and does not bar counsel's participation in pre-trial proceedings") (collecting cases) (alterations in original). However, in his prior motion to disqualify Noren, Hubbuch asserted that "[c]ourts routinely disqualify counsel who participated directly in the events giving rise to the litigation, especially where their credibility or conduct is at issue," and that disqualification "is not premature simply because discovery is ongoing or trial is distant." (Pl. Initial Br. at 3-4 (citing *Finkel*, 740 F. Supp. 2d at 373; *John Wiley & Sons*, 126 F. Supp. 3d at 427)).

Hubbuch's citations prove inaccurate. Hubbuch claims that in both cases, counsel was disqualified. (Pl. CTBC Reply at 10 n.4). However, in both of these cases, the court found that disqualification was *not* appropriate and *denied* the motion for disqualification under Rule 3.7. *See Finkel*, 740 F. Supp. 2d at 375

20

("[T]he Court finds defendants' arguments to be without merit and concludes that disqualification of plaintiffs' counsel under either subsection of Rule 3.7 is not warranted."); *John Wiley & Sons*, 126 F. Supp. 3d at 415-16 ("Plaintiffs have filed a motion to disqualify Neil B. Mooney as counsel for defendants.  For the reasons stated below, plaintiffs' motion is denied.").[4]  Nonetheless, Hubbuch is correct that "courts occasionally have found it appropriate to disqualify an attorney at an earlier stage." *Bakken Res., Inc. v. Edington*, No. 15 Civ. 8686 (ALC), 2017 WL 1184289, at *3 (S.D.N.Y. Mar. 29, 2017) (citing *Sea Trade Mar. Corp. v. Coutsodontis*, No. 09 Civ. 488 (BSJ) (HBP), 2011 WL 3251500, at *11 (S.D.N.Y. July 25, 2011); *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10 Civ. 3291 (NGG), 2011 WL 318090, at *3 (E.D.N.Y. Feb. 1, 2011)); *see also Rizzuto v. De Blasio*, No. 17 Civ. 7381 (ILG) (ST), 2019 WL 1433067, at *8 (E.D.N.Y. Mar. 29, 2019) (noting that some courts have disqualified attorneys from "serving either at trial or in the pre-trial stages of the case" (citing *Gleason v. Zocco*, 941 F. Supp. 32 (S.D.N.Y. 1996); *Fulfree v. Manchester*, 945 F. Supp. 768 (S.D.N.Y. 1996))).

"[W]here a lawyer would be called to testify on behalf of his client, disqualification is warranted if the lawyer's testimony would be 'significantly useful' to the client's case." *Streichert v. Town of Chester, New York*, No. 19 Civ. 7133 (KMK), 2021 WL 735475, at *16 (S.D.N.Y. Feb. 25, 2021) (quoting *Lamborn v.*

---

[4] The Court warns Plaintiff to be more careful in his citations in the future.  Material misrepresentations to a court, even by *pro se* parties, can have detrimental consequences and lead to sanctions.  *See, e.g.*, *Dukuray v. Experian Info. Sols.*, No. 23 Civ. 9043 (AT) (GS), 2024 WL 3812259, at *11 (S.D.N.Y. July 26, 2024), *R&R adopted*, 2024 WL 3936347 (S.D.N.Y. Aug. 26, 2024).

*Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989)).  "[W]here a lawyer would be called to testify on behalf of a party other than his client, disqualification is warranted if the lawyer's testimony is both (1) 'necessary' to the movant's case and (2) 'substantially likely to be prejudicial' to the advocate-witness's client."  *Id.*  Essock has not indicated whether he would seek to call any CTBC attorneys as a witness, and the Court finds it too early to speculate on whether he would be likely to do so.  However, Hubbuch has stated that he "fully intends to call [CTBC] attorneys as witnesses to establish the causal chain between the landlord's directives and [Essock's] execution of the eviction."  (Pl. CTBC Reply at 11).  This claim must be examined under the "necessary" and "substantially likely to be prejudicial" standard.

To start, while attorney Tendler was involved in the underlying eviction proceeding, there is no indication that attorney Monte was involved in such proceedings, as Monte is not listed anywhere in that case's docket.  *See Lunar Estates, LLC d/b/a Lunar Estates of CA, LLC v. Memphis Seoul No. 2 LLC*, LT-322987-23/NY.[5]  Accordingly, there is no present basis on which to disqualify attorney Monte under Rule 3.7(a), as Hubbuch has not shown that Monte even possesses any knowledge that would make his testimony relevant.  Accordingly, the

---

[5] Other counsel listed for Lunar in that action, Susan Baumel-Cornicello and Jason Kranzberg, have not appeared as counsel for Essock in this case.

testimony of Monte is far from "necessary" at this point, and the Court denies his disqualification under Rule 3.7(a).

Further, the Court doubts whether Tendler's testimony would be necessary in this case. Hubbuch claims that Tendler, and potentially other CTBC attorneys, "negotiated stipulations, advised the landlord on strategy, and obtained the warrant of eviction that [Essock] executed." (Pl. CTBC Reply at 11). All that may be true. However, the Court fails to see how any testimony from Tendler on these topics would be relevant, let alone necessary, to a trial here. Lunar is not a defendant in this action, and the only allegation against Essock is the deprivation of property stemming from the execution of the warrant itself. (*See* FAC ¶¶ 111-17). No counsel from CTBC was present during the eviction itself, and could not testify to those events. (CTBC Sur-Reply at 2-3). Further, CTBC's advice to Lunar about strategy, even if relevant, would likely be protected by attorney-client privilege. *See Interpharm*, 2010 WL 1141201, at *5 ("At this stage, there is no evidence that even suggests that [counsel] has unique, non-privileged testimony that would be favorable or unfavorable to either side.").

Even if Tender's testimony were necessary to Hubbuch's case, there is no basis for a finding that it would prejudice Lunar or Essock. *See Lamborn*, 873 F.3d at 531 ("For testimony to be prejudicial . . . the projected testimony of a lawyer or firm member must be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." (internal

quotations and citations omitted)).  Hubbuch does not provide any analysis as to how Tendler's testimony might be prejudicial to either party.  *See Streichert*, 2021 WL 735475, at *17 (finding that the court would "not seek to divine" moving party's theory where not given, particularly "prior to the completion of discovery" (internal quotations and citation omitted)); *Lipin v. Bergquist*, 574 F. Supp. 2d 423, 428 (S.D.N.Y. 2008) (finding disqualification premature where "[t]here ha[d] been no discovery in th[e] [case]," and thus, "the content, relevance, and importance of any witness's trial testimony [was] speculative at best"); *see also Lamborn*, 873 F.2d at 531 (noting that "the moving party bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial" (internal quotations omitted)).  Accordingly, the Court sees no reason to disqualify attorney Tendler under Rule 3.7(a).

Finally, Hubbuch provides no analysis as to why disqualification should be imputed to the entire firm.  *See* RPC 3.7(b)(1) (setting forth circumstances in which a lawyer may not act as an advocate when another lawyer in the same firm is likely to be a witness).  Such motions "are especially 'subject to fairly strict scrutiny.'" *Finkel*, 740 F. Supp. 2d at 374 (quoting *Murray*, 583 F.3d at 178).  "A law firm can be disqualified by imputation only if the movant proves by clear and convincing evidence that the witness will provide testimony prejudicial to the client, and the integrity of the judicial system will suffer as a result." *Murray*, 583 F.3d at 178-79 (cleaned up).  "In particular, to prove that trial testimony will be prejudicial to the

client, the movant must show that the testimony will be so adverse to the client's account of the facts that the client has a clear interest in having his trial counsel discredit the testimony of the witness who is also a member of trial counsel's firm." *Su v. Sotheby's, Inc.*, No. 17 Civ. 4577 (VEC), 2021 WL 3537189, at *4 (S.D.N.Y. Aug. 11, 2021) (citing *Murray*, 583 F.3d at 178).  For the reasons already stated, Hubbuch has made no such showing here.

Accordingly, this Court finds no reason to disqualify Monte, Tendler, or any other CTBC attorneys at this time.

### D. Rule 3.7 as to Noren

Finally, although Hubbuch does not re-raise his challenge to disqualify Noren under Rule 3.7, the Courts finds it appropriate to discuss the issue to ensure the integrity of the adversarial process.

The J&M and DHC Defendants have not indicated whether they would seek to call Noren as a witness, and the Court again finds it too early to speculate on whether they would likely do so.  However, Hubbuch states that he "intends" to call Noren to testify.  (Pl. Initial Br. at 4).  As such, Noren's potential testimony must likewise be examined under the "necessary" and "substantially likely to be prejudicial" standard.

It is unclear at this point whether Noren's testimony would be "necessary" at trial, although the Court recognizes its centrality to some of the claims at issue. Despite Noren's involvement, however, it is possible that Plaintiff's testimony and discovery materials will fully speak to the causes of action to be tried.  Further,

25

Noren's testimony will only encompass part of the underlying facts, leaving the possibility that causes of action implicating his testimony will be dismissed, settled, or otherwise resolved before trial.

Moreover, even if necessary, there has been no showing that Noren's testimony as to the underlying events would prejudice the other J&M and DHC Defendants. *See Lamborn*, 873 F.3d at 531 ("For testimony to be prejudicial . . . the projected testimony of a lawyer or firm member must be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." (internal quotations omitted)). And indeed, Hubbuch does not provide any analysis as to how Noren's testimony might be prejudicial to any of his co-Defendants. *See Streichert*, 2021 WL 735475, at *17 (finding that the court would "not seek to divine" moving party's theory where not given, particularly "prior to the completion of discovery" (internal quotations omitted)); *see also Lipin*, 574 F. Supp. 2d at 428.

Finally, "the concerns motivating Rule 3.7 are attenuated where, as here, the witness-'advocate' is *not* someone who will be trying the case to the jury." *Murray*, 583 F.3d at 179 (emphasis in original). Noren previously stated that he would withdraw as counsel should Plaintiff's complaint survive the now-filed motion to dismiss. (Def. Initial Br. at 7). This substantially mitigates any concern that his presence as a witness would taint the trial. *See, e.g.*, *Power Play 1 LLC v. Norfolk Tide Baseball Club, LLC*, No. 17 Civ. 4831 (WHP), 2017 WL 5312193, at *3

26

(S.D.N.Y. Nov. 13, 2017) (disqualification under Rule 3.7 not warranted where defendants represented that potential attorney-witness "will not be appearing as counsel of record for any party" and "will not be advocating in front of the fact finder on behalf of the defendants"); *Antler v. Lloyd's*, No. 11 Civ. 1915 (CS), 2012 WL 13442458, at \*5 n.5 (S.D.N.Y. Mar. 27, 2012) (disqualification under Rule 3.7 not warranted where defendants represented that potential attorney witness "will not be trial counsel"); *compare Gorbaty v. Wells Fargo Bank, N.A.*, No. 10 Civ. 3291 (NGG), 2011 WL 318090, at \*3 (E.D.N.Y Feb. 1, 2011) (disqualifying counsel during pretrial stage where "plaintiff has not agreed to forego having [counsel] serving as trial counsel, instead only allow[ing] for the possibility that [counsel] will not be the attorney at trial" (quotations omitted)).

As such, disqualification of Noren under Rule 3.7 is premature and would be inappropriate at this time. *See Interpharm*, 2010 WL 1141201, at \*5 (finding disqualification to be premature and explaining that "[e]ven if the complaint survives [defendant's] pending motion to dismiss, the matter is still a long way from trial. Discovery has yet to be completed, and, in all probability, summary judgment motions will have to be resolved before the matter is ready for trial"); *Ross v. Blitzer,* No. 09 Civ. 8666 (HB), 2009 WL 4907062, at \*3 (S.D.N.Y. Dec. 21, 2009) (noting that "the witness-advocate rule is concerned with preventing potential taint at trial" and that, where there has been "only limited discovery and it is not yet

clear the extent to which an attorney's testimony might be necessary or prejudicial, numerous courts have found that motions to disqualify counsel are premature").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for disqualification is **DENIED**. The Clerk of Court is respectfully directed to close the open motions at Docket Numbers 18 and 40.

**SO ORDERED.**

DATED:      New York, New York
            February 11, 2026

_____
The Honorable Gary Stein
United States Magistrate Judge

28