UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD B. HUBBUCH,
Plaintiff,

-v-

J&M REALTY SERVICES CORP., *et al.*,
Defendants.

25-CV-7642 (JPO)

MEMORANDUM AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Edward B. Hubbuch, proceeding *pro se*, asserts a host of state and federal claims against Defendants J&M Realty Services Corp., Jerry Edelman, David Edelman, Davidoff Hutcher & Citron LLP ("DHC"), George Essock, Jr., Benjamin Noren, and the City of New York (together, "Defendants") arising from the eviction of his restaurant from its leased premises in July 2024. (ECF No. 31.) Now before the Court are Defendants' three motions to dismiss. (ECF Nos. 63, 64, 84.) For the reasons that follow, the Court grants Defendants' motions as to Hubbuch's federal claims and dismisses Hubbuch's state law claims without prejudice to refiling in state court.

## I. Factual and Procedural Background

Hubbuch is the founder and sole proprietor of "Memphis Seoul," a restaurant and catering company known for its Southern-Korean fusion cuisine. (ECF No. 31 ("FAC") ¶¶ 8, 16.) Hubbuch sought to expand the restaurant to a location in Manhattan's East Village, and in 2022, he executed a commercial lease between Memphis Seoul and the premises at 123 First Avenue, New York, New York, which are managed by Defendants J&M Realty, Jerry Edelman, and David Edelman (together, the "Edelman Defendants"). (*Id.* ¶¶ 16-19; *see also* ECF No. 31-1 at 2.) Hubbuch alleges that the Edelman Defendants made numerous material misrepresentations

about the property's condition and viability as a setting for a restaurant, which caused a five-month delay in opening and forced him to incur significant financial losses. (FAC ¶¶ 25, 33, 43, 45.)

On July 3, 2024, Defendant George Essock, Jr., a New York City marshal, issued a Notice of Eviction to Memphis Seoul. (ECF No. 31-1 at 68.) The Notice warned that, if Memphis Seoul did not vacate the premises within fourteen days, it "may be evicted, without further notice on the following business day or on any business day after," and stated that the earliest eviction date would be July 18, 2024. (*Id.* (emphases omitted).) Hubbuch alleges, however, that he was subsequently informed by Essock's office that the eviction would not take place until July 24, 2024. (FAC ¶ 58.) Nonetheless, on July 18, 2024, Essock appeared at the restaurant, ordered Memphis Seoul staff to vacate the premises, and gave the staff only twenty minutes to retrieve items. (*Id.* ¶¶ 57, 59.) Essock then conducted a "cursory and deficient inventory of the remaining property," which did not include a retrieval protocol, schedule, or written instructions, and which was subsequently lost by Hubbuch's operations director. (*Id.* ¶ 60.) When Hubbuch's operations director asked David Edelman how Hubbuch could retrieve the remaining property, Edelman replied that J&M Realty would be "holding it until [Hubbuch] give[s] [them] something," referring to back rent or other monetary concessions. (*Id.* ¶ 61.) The property held by the Edelman Defendants included "trademarked proprietary recipe books, federally protected signage, leased cooking equipment, and confidential business records." (*Id.* ¶ 62.)

Following the eviction, the Edelman Defendants—acting through their counsel, Defendant Benjamin Noren—informed Hubbuch that his business property would not be returned unless Hubbuch agreed to pay back rent, remove certain social media posts critical of

J&M Realty, sign a broad non-disparagement agreement, dismiss a small-claims lawsuit he had filed in July 2024 against Jerry Edelman, and agree to a general release of all claims against the owner of the premises and the Edelman Defendants. (*Id.* ¶¶ 68-69, 86.) Hubbuch refused to sign a general release, and that provision was ultimately omitted from the final settlement agreement executed between Memphis Seoul and J&M Realty on August 6, 2024 (the "Settlement Agreement"). (*Id.* ¶¶ 88, 136; *see also* ECF No. 31-1 at 121-25.)

Hubbuch, proceeding *pro se*, filed suit against Defendants on September 14, 2025. (ECF No. 1.) On November 6, 2025, he filed the operative amended complaint (FAC), which Defendants separately moved to dismiss (ECF Nos. 63, 64, 84) with supporting memoranda of law (ECF Nos. 63-2 ("Essock Mem."), 65 ("J&M Mem."), 85). Hubbuch opposed each of the motions (ECF Nos. 67, 68, 87), and Defendants—with the exception of Essock, whose reply was later struck as untimely (ECF No. 83)—filed replies in further support of their motions (ECF Nos. 71, 93).

## II. Legal Standard

Defendants move to dismiss Hubbuch's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 63-2 at 10; ECF No. 65 at 11; ECF No. 85 at 6.) Because Defendants' arguments about standing go to the existence of subject matter jurisdiction, however, their motions are better styled as motions brought pursuant to Rule 12(b)(1). *See All. for Env't. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), the proper procedural route is a motion under Rule 12(b)(1)." (citations omitted)).

Under Rule 12(b)(1), a claim must be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000). Since a district court may adjudicate only live "[c]ases" or "[c]ontroversies," *see Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021) (quoting U.S. Const. art. III), a plaintiff must "allege facts that affirmatively and plausibly suggest that [he] has standing to sue," *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

## III. Discussion

Hubbuch asserts ten claims against Defendants. (*See generally* FAC.) Of these, four (his due process, *Monell*, conspiracy, and declaratory judgment claims) are brought under federal law. The remainder (fraudulent inducement, commercial tenant harassment, conversion, deceptive business practices, breach of the implied covenant of good faith and fair dealing, and tortious interference) are brought under state law.

### A. Federal Claims

The Court begins with Hubbuch's federal claims. As a threshold matter, Defendants contend that, because Hubbuch's claims are premised on injuries to Memphis Seoul, Hubbuch himself has no standing to sue. (Essock Mem. at 12; J&M Mem. at 12.) Defendants are correct. It is axiomatic that "shareholders and members of limited liability companies—even sole shareholders and sole members—do not have standing to sue for wrongs to the corporate entity." *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 552 (S.D.N.Y. 2013), *aff'd*, 559 F. App'x 58 (2d Cir. 2014); *see also Elfand v. City of New York*, No. 25-CV-7170, 2025 WL 3248807, at *9 (S.D.N.Y. Nov. 21, 2025) ("[W]here federal constitutional violations are alleged, it remains the case that '[a] shareholder—even the sole shareholder—does not have standing to

assert claims alleging wrongs to the corporation.'" (quoting *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 733, 736 (2d Cir. 1987))).

Here, Hubbuch's due process, *Monell*, and conspiracy claims all arise from the eviction of Memphis Seoul from its leased premises (*see* ECF No. 31-1 at 68 (listing Memphis Seoul as the tenant to be evicted)) and the subsequent retention by the Edelman Defendants of Memphis Seoul's business property, including "trademarked proprietary recipe books, federally protected signage, leased cooking equipment, and confidential business records" (FAC ¶¶ 61-62). Although Hubbuch occasionally and cursorily refers to the detained property as his own throughout the Amended Complaint (*see, e.g.*, FAC ¶ 152), his allegations—and the exhibits he attaches to the complaint—refer only to items that are "proprietary business assets" belonging to Memphis Seoul. (*See id.* ¶¶ 62, 87, 108, 117, 155; ECF No. 31-1 at 80 (alleging in small claims court that the Edelman Defendants unlawfully retained "[Memphis Seoul's] federally trademarked recipe book and several pieces of [Memphis Seoul's] federally trademarked branding"), 122 (providing, as part of the Settlement Agreement, that J&M Realty would return Memphis Seoul's "Recipe Book" and that Memphis Seoul would "arrange, at its sole cost, for the removal of its personal property").) Because Hubbuch points to no specific items withheld by the Edelman Defendants that are his personal belongings, rather than business assets owned by Memphis Seoul, he does not have standing to bring claims related to the recovery of that property.

In his opposition, Hubbuch alleges that he individually owns the trademark "Memphis Seoul," and therefore that the seizure of his intellectual property confers standing. (ECF No. 67 at 5.) But the U.S. Patent and Trademark Office records reveal that the "Memphis Seoul" mark is owned by Memphis Seoul Intellectual Property LLC, not Hubbuch himself. *See* "Memphis

Seoul," U.S. Pat. & Trademark Off., https://perma.cc/489E-7YHZ (last accessed June 22, 2026); *Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010) ("The Court may properly take judicial notice of official records of the United States Patent and Trademark Office[.]"). Alternatively, Hubbuch argues that (1) single-member LLCs are structurally distinguishable for purposes of standing because they establish an "identity of interest" between the member and the LLC, and (2) the fact that Hubbuch is the personal guarantor of the commercial lease means that he has suffered "injury in fact" as a result of the eviction sufficient to confer standing. (ECF No. 67 at 3-4.) The law is clear, however, that "even sole shareholders" of "limited liability companies . . . do not have standing to sue for wrongs to the corporate entity." *RIGroup*, 949 F. Supp. 2d at 552; *see also Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 736 (2d Cir. 1987). And though Hubbuch, as the guarantor of Memphis Seoul's lease, may well have incurred financial obligations once the restaurant defaulted on its payments, such an injury is not "separate and distinct from the injury sustained by the directly injured [LLC]" such that it gives Hubbuch standing to bring claims on Memphis Seoul's behalf. *Jackson Nat. Life Ins. Co. v. Ligator*, 949 F. Supp. 200, 206 (S.D.N.Y. 1996) (citing *Ceribelli v. Elghanayan*, 990 F.2d 62, 63 (2d Cir. 1993)) (holding that creditor of corporate entity lacks standing where creditor's injury results only from the debtor's inability to pay an obligation); *cf. People's United Bank v. Culver*, No. 17-CV-723, 2019 WL 3944440, at *5-6 (D. Conn. Aug. 21, 2019) (rejecting the argument that a plaintiff had standing to sue for an LLC's contractual losses by virtue of being that LLC's guarantor); *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir. 1993) ("A shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock . . . [,] even when the plaintiff is the sole shareholder of the injured corporation.").

Because Hubbuch lacks standing to challenge the circumstances of Memphis Seoul's eviction and the retention by the Edelman Defendants of Memphis Seoul's business property, his due process, *Monell*, and conspiracy claims are dismissed for lack of subject matter jurisdiction.

### B. Remaining Claims

#### 1. Declaratory Judgment Claim

Hubbuch requests a declaratory judgment invalidating the Settlement Agreement on grounds of duress under the Declaratory Judgment Act, 28 U.S.C. § 2201. (FAC ¶ 139.) "The Declaratory Judgment Act, however, provides only a federal remedy, not a federal claim, so it can only be applied in cases in which there is an independent basis for the exercise of federal subject matter jurisdiction." *Colabella v. Am. Inst. of Certified Pub. Accts.*, No. 10-CV-2291, 2011 WL 4532132, at *21 (E.D.N.Y. Sept. 28, 2011). Because the Court has dismissed all of Hubbuch's federal claims for lack of subject matter jurisdiction, "no substantive federal claim remains upon which [Hubbuch] can base [his] request for declaratory relief." *Id.*; *see also Springfield Hosp. v. Hofmann*, 488 F. App'x 534, 535 (2d Cir. 2012) (summary order) (concluding that a plaintiff "cannot maintain an action for a declaratory judgment without an underlying federal cause of action").

Accordingly, Hubbuch's declaratory judgment claim is dismissed.

#### 2. State Law Claims

In addition to his federal claims, Hubbuch also asserts six state law claims: fraudulent inducement, commercial tenant harassment, conversion, deceptive business practices, breach of the implied covenant of good faith and fair dealing, and tortious interference. (*See generally* FAC.) Because Hubbuch's federal claims have been dismissed, however, and because no diversity jurisdiction exists in this action (*see id.* ¶ 7), the Court must now decide whether to exercise supplemental jurisdiction over Hubbuch's state law claims.

A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also In re Merrill Lynch Limited P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam) (concluding that district courts should decline to exercise supplemental jurisdiction over state law claims when all federal claims have been dismissed).

In light of this case law, the Court declines to exercise supplemental jurisdiction over Hubbuch's state law claims. Accordingly, those state law claims are dismissed without prejudice to refiling in state court.

## IV. Leave to Amend

Hubbuch requests leave to amend should his complaint be deemed defective. (ECF No. 67 at 12; ECF No. 68 at 25.) Complaints by *pro se* plaintiffs "should be liberally construed, and district courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend, unless it would be futile." *Kallas v. Fiala*, 591 F. App'x 30, 31 (2d Cir. 2015) (summary order). Hubbuch may yet make allegations in a second amended complaint—for example, about any personal items that may have been mixed up in the business assets withheld by the Edelman Defendants—that confer upon him standing to bring certain claims.

Accordingly, Hubbuch's request for leave to amend his complaint is granted.

## V. Conclusion

For the foregoing reasons, Defendants' motions to dismiss Hubbuch's Amended Complaint are GRANTED as to Hubbuch's due process, *Monell*, conspiracy, and declaratory

judgment claims for lack of standing, and those claims are dismissed without prejudice. Hubbuch's state law claims are dismissed without prejudice to refiling in state court.

Hubbuch's request for leave to amend his complaint is GRANTED, and Hubbuch may file a second amended complaint within 30 days after the date of entry on the docket of this Memorandum and Order.

The Clerk of Court is directed to close the motions at Docket Numbers 63, 64, and 84.

SO ORDERED.

Dated: July 8, 2026
New York, New York

J. PAUL OETKEN
United States District Judge