UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD B. HUBBUCH,<br>*Plaintiff,*<br>*v.*<br>J&M REALTY SERVICES CORP.,<br>JERRY EDELMAN, DAVID EDELMAN,<br>DAVIDOFF HUTCHER & CITRON LLP,<br>BENJAMIN NOREN,<br>THE CITY OF NEW YORK, and<br>GEORGE ESSOCK JR., in his individual and official capacity as a New York City Marshal,<br>*Defendants.* | Case No. 25-CV-7642 (JPO) (GS)<br><br>**SECOND AMENDED COMPLAINT**<br><br>**(TRIAL BY JURY DEMANDED)** |

Plaintiff Edward B. Hubbuch, proceeding *pro se* and in his individual capacity, brings this Second Amended Complaint for actual, punitive, declaratory, and equitable relief arising from: (1) a violation of 42 U.S.C. § 1983 for the deprivation of property without due process of law, including municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); and (2) related claims for declaratory judgment under 28 U.S.C. § 2201 and under New York State law for fraudulent inducement, conversion, deceptive business practices under New York General Business Law § 349, and tortious interference with contract and prospective business relations.

This Second Amended Complaint draws upon investigative records of the New York City Department of Investigation ("DOI") produced to Plaintiff on February 13, 2026, and March 9, 2026, pursuant to the Freedom of Information Law and a related Article 78 proceeding (see *Dkt. 86-1* through *86-8*), including two Warning Letters signed for by ESSOCK, the DOI's

substantiation findings, and the Adult Protective Services referral record for Control No. 23-1128. These records document the pattern of misconduct, the City's actual notice, and the causal chain underlying Plaintiff's *Monell* claim. Key documents are attached hereto as ***Exhibit A*** through ***Exhibit F*** and incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

## I. NATURE OF THE ACTION

1. This action seeks redress for a comprehensive and coordinated scheme by Defendants J&M REALTY SERVICES CORP. ("J&M REALTY"), JERRY EDELMAN, DAVID EDELMAN, DAVIDOFF HUTCHER & CITRON LLP ("DHC LLP"), BENJAMIN NOREN, THE CITY OF NEW YORK, and New York City Marshal GEORGE ESSOCK JR. (in both his individual and official capacities).

2. This action arises from the unconstitutional manner in which Defendant GEORGE ESSOCK JR. executed the eviction at 123 First Avenue in the East Village area of Manhattan—the commercial premises Plaintiff leased and personally guaranteed, and operated as a restaurant known as Memphis Seoul—on July 18, 2024, depriving Plaintiff of his personal property for approximately four months, and from the deliberate indifference of THE CITY OF NEW YORK to a documented pattern of identical misconduct by ESSOCK that the City's own DOI knew about and chose not to remedy.

3. Plaintiff brings this action in his individual capacity only, for injuries to his personal property, his personal business relations, and his personal legal obligations. Plaintiff does not assert, and expressly disclaims, any claim for injuries suffered by Memphis Seoul LLC, Tasteland Holdings LLC, or any other entity as an entity.

4. On July 18, 2024, ESSOCK, acting under color of state law, evicted the premises on approximately 20 minutes' verbal notice, having furnished false information about the eviction date through his staff. ESSOCK conducted no inventory, furnished no written notice of the time and manner of the eviction, and provided no protocol by which Plaintiff could retrieve his personal property.

5. As a direct and foreseeable result, Plaintiff's personal property was trapped inside the premises for approximately four months. The Private Defendants leveraged it to coerce a settlement of a small-claims dispute, obstructed and delayed its return, and caused Plaintiff to lose confirmed catering engagements and approved vendor relationships built over years.

6. Between June 2023 and February 2024—the thirteen (13) months preceding Plaintiff's eviction—ESSOCK was the subject of at least four documented incidents of substantively identical enforcement-related misconduct. The DOI's response was non-binding warning letters, silently filed, with no discipline, no suspension, and no retraining. When Plaintiff later sought the DOI's records, the department suppressed them with shifting and mutually contradictory sworn explanations.

## II. JURISDICTION & VENUE

7. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983, and over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a), which arise from the same common nucleus of operative fact. This Court has jurisdiction over the declaratory judgment claim pursuant to 28 U.S.C. § 2201.

8. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this District and the Defendants reside or transact business here.

9. Plaintiff's federal claims are timely. The applicable limitations period for § 1983 claims in this District is the three-year period of CPLR § 214(5). See *Owens v. Okure*, 488 U.S. 235 (1989); *Wilson v. Garcia*, 471 U.S. 261 (1985). The events giving rise to this action occurred in July through November 2024, and this action was commenced on September 14, 2025.

10. General Municipal Law § 50-e notice-of-claim requirements do not apply to § 1983 actions brought in federal court. *Felder v. Casey*, 487 U.S. 131 (1988).

## III. PARTIES & STANDING

11. Plaintiff Edward B. Hubbuch is an individual resident of Brooklyn, New York. Plaintiff has standing in his individual capacity on three independent grounds:

    (a) **Personal Property**: Plaintiff's personal property was deprived without due process of law by the manner of execution of the July 18, 2024 eviction and was not returned for approximately four months;

    (b) **Personal Business Relations**: Plaintiff operated his catering business as a sole proprietor reporting income and losses on his personal IRS Form 1040, Schedule C; the business' income, losses, obligations, and vendor relationships were his personally; *and*

(c) **<u>Personal Obligations</u>**: Plaintiff personally executed a personal guaranty of the lease for the premises and personally guaranteed a $312,000 SBA EIDL loan, exposing his individual assets, credit, and Social Security number.

12. Defendant GEORGE ESSOCK, JR. is a New York City Marshal (Badge No. 71), appointed by the Mayor of the City of New York and exercising sovereign functions derived from state law, including CPLR Article 47. He is sued individually and in his official capacity.

13. Defendant THE CITY OF NEW YORK is a municipal corporation. Its Department of Investigation is charged with supervising, investigating and initiating discipline concerning City Marshals.

14. Defendants J&M REALTY SERVICES CORP., JERRY EDELMAN, and DAVID EDELMAN are, upon information and belief, the managing agent and principals of the premises, and were identified in the lease as the landlord's agent.

15. Defendant BENJAMIN NOREN is an attorney for who represented the EDELMAN Defendants in the small-claims action described below and negotiated and drafted the August 6, 2024 Settlement Agreement.

16. Defendant DAVIDOFF HUTCHER & CITRON LLP ("DHC LLP") is a New York limited liability partnership engaged in the practice of law, of which Defendant BENJAMIN NOREN is a partner. The conduct described herein was committed by NOREN in the ordinary course of DHC LLP's business, rendering DHC LLP liable under N.Y. Partnership Law § 26.

## IV. FACTUAL ALLEGATIONS

### A. The Personal Property and Plaintiff's Individual Ownership

17. At the time of the eviction, Plaintiff personally owned personal property at the premises, including but not limited to:

- Original handwritten recipe journals authored by Plaintiff personally beginning in 2018, years before any corporate entity held the lease;
- Furniture, presently in Plaintiff's personal possession and now in partial use in his family's home;
- Kitchen equipment owned by Plaintiff personally, including freezers, refrigerators, shelving units, and storage racks and containers;
- Kitchen equipment leased by Plaintiff individually—including a $25,000 Henny Penny deep fryer and an EcoLogic dishwasher—for which Plaintiff remained personally liable after the eviction;
- Multiple iPad ordering terminals;
- Plaintiff's MacBook personal laptop; *and*
- Smallwares and related items.

18. This property was purchased with Plaintiff's personal funds, including funds withdrawn from Plaintiff's personal retirement accounts. It was never transferred to or capitalized by

any entity, never depreciated or claimed as a business asset on any tax filing, and was owned by Plaintiff individually.

19. Plaintiff also personally guaranteed a $312,000 SBA EIDL loan with his personal credit and Social Security Number. Plaintiff reported his business income and losses on his personal Form 1040, Schedule C, and the business' losses flowed to him personally.

**B. The Misrepresentations and Guaranty**

20. In or about early 2023, Defendants advertised the premises to the public with prominent signage reading "TURN-KEY RESTAURANT FOR LEASE," and Defendant JERRY EDELMAN represented orally that the premises were ready for immediate food-service operation.

21. In fact, the premises had concealed defects that were peculiarly within Defendants' knowledge: prior-tenant Consolidated Edison arrears that precluded gas service absent payment of concealed debt; the absence of a Department of Buildings commercial kitchen permit; and a defective exhaust system. See *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959).

22. Defendant DAVID EDELMAN personally paid Plaintiff's general contractor $1,000 for damage caused by an unauthorized basement entry in or about February 2023, in which a hot water line was severed—an admission of the entry, the damage, and Defendants' knowledge of the premises' condition.

23. Relying on these misrepresentations, Plaintiff personally executed a Personal Guaranty of the lease, pledging his individual assets, and invested personal and borrowed funds in the premises.

**C. The False Information and the Eviction**

24. On July 15, 2024, Plaintiff telephoned ESSOCK's office and spoke with staff member JESSIKA APONTE, who informed Plaintiff that the eviction would occur on July 24, 2024.

25. Relying on that representation, Plaintiff arranged his affairs, including confirmed catering obligations, on the understanding that he had until July 24, 2024.

26. On July 18, 2024—six days earlier than represented—ESSOCK appeared at the premises and executed the eviction of the restaurant premises on approximately 20 minutes' verbal notice.

27. The Marshals Handbook of Regulations mandates written notice of the time and manner of eviction, advance notice periods, a mandatory inventory of the premises, and a retrieval protocol by which evicted persons may recover their property. ESSOCK violated each of these mandates.

28. At the time of the eviction, Defendant DAVID EDELMAN stated, in ESSOCK's presence, that the premises and its contents would be kept until Plaintiff *"gives [the EDELMAN Defendants] something."* ESSOCK heard this statement and did nothing.

29. Plaintiff's absence from the premises during the period following the eviction was involuntary and caused entirely by the false information furnished by ESSOCK's office and the 20-minute notice. Plaintiff did not abandon his property—it was taken from him.

**D. The Four-Month Deprivation and Coercion**

30. By email dated August 2, 2024, Defendant BENJAMIN NOREN, acting through his firm DHC LLP, and on behalf of the EDELMAN Defendants, advised Plaintiff that Defendants would not return Plaintiff's recipe book and branded materials unless Plaintiff agreed to a general release and non-disparagement agreement, stating in substance: "*We need a general release and a non-disparagement agreement. If you are not amenable to that, we will await the outcome of your lawsuit.*" (See a true and correct copy of the email annexed as ***Exhibit A***).

31. The property NOREN proposed to leverage was in the EDELMAN Defendants' possession solely because of ESSOCK's unconstitutional manner of execution, which provided no inventory and no retrieval protocol. NOREN knew or should have known that the property had been retained following a procedurally defective eviction.

32. On August 6, 2024, under this pressure, and with perishable inventory, confirmed catering contracts, and continuing personal liability on leased equipment, Plaintiff executed the Settlement Agreement drafted by NOREN. (See a true and correct copy of the agreement annexed as ***Exhibit B***).

33. The Settlement Agreement's operative dismissal provision dismisses only the small-claims action (Index No. CC-000385-24/NY). The Agreement contains no general release

of any other claim and no release of any federal claim. Its non-disparagement provision, by its terms, binds *"owners … including Edward B. Hubbuch"* individually.

34. Paragraph 5 of the Settlement Agreement recites that the undersigned *"have been represented by counsel."* This recital is false. Plaintiff had no counsel, and NOREN—who drafted the Agreement—knew this.

35. Paragraph 3 of the Settlement Agreement required Plaintiff to obtain $1,000,000 in insurance coverage naming J&M REALTY SERVICES and the titled owner of the premises as additional insureds as a condition of accessing his own property—a condition that functioned as a constructive barrier.

36. After the Agreement was signed, the EDELMAN Defendants obstructed and delayed Plaintiff's access notwithstanding their obligation to facilitate retrieval, communicating through NOREN that access would be "preplanned," then that no access would be available until September 2024, and finally granting a single "last opportunity" window on September 10, 2024. Plaintiff did not retrieve the last of his property until approximately November 2024—roughly four months after the eviction.

37. During the four-month deprivation, Plaintiff lost confirmed catering engagements, including a CNN/ezCater engagement of July 26, 2024 valued at $2,320, and lost or was suspended from approved-vendor relationships with Cater2.me, CaterCow, ezCater, Fooda, FoodFleet, Restaurant Associates/Foodworks, and Sharebite, through which Plaintiff had been approved to serve Fortune 500 corporate clients. Plaintiff incurred

storage and moving expenses, lost perishable inventory, and suffered damage to his property.

**E. The City's Documented Pattern and Deliberate Indifference**

38. Between June 2023 and February 2024—the 13 months preceding Plaintiff's eviction—ESSOCK was the subject of at least four documented incidents of misconduct involving evictions and seizures, each sharing failure modes identical to Plaintiff's injury: false or conflicting information emanating from his office, bypassed mandatory safeguards, and administrative chaos in which, by ESSOCK's own admission to the DOI, people and property *"got lost in the mess."*

39. The four incidents that constitute this policy of deliberate indifference:

***Blocker* (June 2, 2023)**

40. In *Equity LLC v. Patricia Blocker*, Index No. 323910/22 (Civ. Ct. Kings Cnty.), ESSOCK executed the eviction of a vulnerable tenant without required Adult Protective Services ("APS") presence, causing a medical emergency requiring Emergency Medical Services. The DOI's own records confirm this incident: The DOI's Warning Letter of September 14, 2023 describes it as *"the first incident of this nature"* against ESSOCK and records that *"Emergency Medical Services had been called to the scene."*

***Uddin* (June 2023)**

41. In *334 Foster Ave., LLC v. Ahmed Uddin*, Index No. LT-300842-22/KI (Civ. Ct. Kings Cnty.), ESSOCK executed a surprise eviction of a vulnerable tenant without the required advance notice, causing a medical crisis. The DOI's own produced records include the

APS referral database entry for Control No. 23-1128, created June 16, 2023, identifying "GEORGE ESSOCK JR." as the marshal and referencing Docket No. 800842/22, corresponding to the *Uddin* index number. The DOI's later sworn characterization of this referral as a *"typographical error"* is contradicted by the DOI's own records. (See ***Exhibits C***, ***E***.)

***Paul*** **(August 11, 2023)**

42. In *61 Oliver Owners Corp. v. James Paul*, Index No. 313472-23/KI (Civ. Ct. Kings Cnty.), ESSOCK completed the eviction of an elderly veteran before APS arrived, in violation of Marshals Handbook Chapter IV, § 6-7. When the tenant's family contacted the Marshal's office, *"conflicting information was provided by the office personnel."* The DOI formally found the violation and apologized for *"any additional stress caused by conflicting information provided by the Marshal's office"*—the same failure mode by which ESSOCK's office furnished Plaintiff the false July 24, 2024 eviction date.

***Sanchez*** **(February 14, 2024)**

43. ESSOCK booted and towed a vehicle without verifying its Vehicle Identification Number ("VIN"), caused notices to issue with a VIN he knew to be inaccurate, and repeatedly scheduled the vehicle for auction while its owner searched for it for months, accumulating charges totaling $10,655.81.

44. In his sworn interview with the DOI, ESSOCK admitted the case *"fell through the cracks"* and that *"the guy got lost in the mess"* of his office. The DOI substantiated the complaint and, on December 18, 2024, issued a second Warning Letter, again threatening

that "disciplinary proceedings may be commenced" and again merely requesting corrective procedures. (See ***Exhibit F***.)

45. Each Warning Letter threatened future discipline and imposed none. No suspension, retraining, supervision, audit, or monitoring followed either letter.

46. The DOI's sworn admissions confirm that, as to the *Blocker* incident and the *Uddin* incident, the DOI conducted no investigation and imposed no discipline.

47. The DOI's characterization of APS Referral 23-1128 as a *"typographical error"* is a bad-faith fabrication: the referral number is a 10-digit database entry, and DOI's subsequent invocation of "personal privacy" exemptions to withhold records it claimed did not exist confirms that responsive materials were located and suppressed. DOI's own produced records (the APS referral database entry for Control No. 23-1128, created June 16, 2023, under ESSOCK's name) contradict that sworn explanation.

48. Specifically, on March 9, 2026, the DOI certified through counsel to the New York Supreme Court that, following a "reasonable and diligent search," no additional responsive documents existed. On March 10, 2026—less than 24 hours later—the DOI issued a formal FOIL determination granting Plaintiff's request "in part and denying in part" based on "personal privacy" exemptions under Public Officers Law §§ 87(2)(b) and 89(2)(b). One of these sworn positions is false. (See ***Exhibit D***.)

49. The timing of the DOI's partial production (February 13, 2026) coincided with Defendant THE CITY OF NEW YORK's motion to dismiss this action, in which the City argued Plaintiff had failed to plead a "pattern" of misconduct. The DOI's suppression of the

*Blocker* and *Uddin* records operated to conceal from this Court the evidence establishing that pattern.

50. The City's response to four documented incidents of identical misconduct over 13 months —including at least two incidents resulting in medical emergencies—was deliberate indifference: non-binding warnings, no discipline, no supervision, and, when the records were sought, suppression with shifting, mutually contradictory explanations.

## V. CAUSES OF ACTION

### COUNT ONE

### DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS
### (42 U.S.C. § 1983)
### (Against GEORGE ESSOCK)

51. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

52. Defendant GEORGE ESSOCK JR. acted under color of state law. He is appointed by the Mayor of the City of New York. He performs a function (execution of eviction warrants) that is exclusive to state authority under CPLR Article 47. He also exercises powers coercive in nature, including command of police assistance and control of access to seized property. See *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982); *Carrasco v. Klein*, 381 F. Supp. 782 (E.D.N.Y. 1974).

53. This claim does not challenge the underlying eviction judgment, which is not asserted as a basis of liability. This claim challenges only the manner of execution: the false notice,

the 20-minute vacate order, the absence of inventory, and the absence of any retrieval protocol. See *Mathews v. Eldridge*, 424 U.S. 319 (1976).

54. ESSOCK exceeded the scope of the eviction warrant by violating the mandatory procedural safeguards of the Marshals Handbook. Any quasi-judicial immunity does not extend to procedural violations outside the scope of a facially valid warrant.

55. Pre-deprivation process was feasible and mandated; it was not provided. Post-deprivation remedies were constitutionally inadequate because Plaintiff's property was immediately converted and leveraged to coerce a settlement, rendering state-law remedies illusory. See *Zinermon v. Burch*, 494 U.S. 113 (1990).

56. Defendant DAVID EDELMAN’s statement that the property would be “held” until Plaintiff gave the Edelmans “something,” made in ESSOCK’s presence and unopposed by him, constitutes acquiescence in the retention of property that ESSOCK had a duty to secure and return.

**COUNT TWO**

**MUNICIPAL LIABILITY UNDER *MONELL***

**(Against THE CITY OF NEW YORK)**

57. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

58. Defendant THE CITY OF NEW YORK, through the DOI, maintained a custom and policy of deliberate indifference to the documented pattern of unconstitutional eviction practices by GEORGE ESSOCK JR., which custom and policy was the moving force behind the deprivation of Plaintiff’s personal property.

59. The DOI, an agency of Defendant THE CITY OF NEW YORK, had final policymaking and supervisory authority over City Marshals, including the investigation of marshal misconduct and the initiation of disciplinary proceedings. The DOI had actual knowledge of the pattern: the *Blocker* incident (June 2023), the *Uddin* incident (June 2023), the *Paul* incident (August 2023), and the *Sanchez* incident (February 2024), each documented in the DOI's own records.

60. Each prior incident shares operative facts with Plaintiff's injury: false or conflicting information provided by ESSOCK's office staff—acknowledged and apologized for by the DOI in the *Paul* matter (*Paul*); bypassed mandatory safeguards including APS protocols (*Blocker*, *Uddin*, *Paul*); administrative chaos admitted by ESSOCK himself, in which *"the guy got lost in the mess"* of ESSOCK's office (*Sanchez*); and coercive retention of wrongfully seized property (*Sanchez*).

61. The City's response was non-binding warning letters, silently filed, with no suspension, retraining, supervision, or discipline. The DOI's sworn admissions confirm it took no action whatsoever on the *Blocker* and *Uddin* matters.

62. When Plaintiff sought the records, the DOI suppressed them: certifying under oath on March 9, 2026, that no responsive records existed, then asserting privacy exemptions over the same records on March 10, 2026; characterizing a 10-digit APS referral number as a *"typographical error"*; and producing a partial production timed to the City's motion to dismiss this action. This suppression is itself evidence of the custom: a policy of concealing marshal misconduct rather than correcting it.

63. The City's deliberate indifference was the moving force behind Plaintiff's injury: had the DOI taken any meaningful action after the first, second, third, or fourth documented incident, ESSOCK would not have executed Plaintiff's eviction with false notice, no inventory, and no retrieval protocol on July 18, 2024, and Plaintiff's personal property would not have been trapped and leveraged for four months.

**<u>COUNT THREE</u>**

**DECLARATORY JUDGMENT**
**(28 U.S.C. § 2201)**
**(Against J&M REALTY and the EDELMAN Defendants)**

64. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

65. An actual controversy exists between Plaintiff and J&M REALTY and the EDELMAN Defendants regarding the validity and enforceability of the August 6, 2024 Settlement Agreement and the Personal Guaranty as against Plaintiff individually.

66. The Settlement Agreement is voidable for duress:

(a) The property at issue was in Defendants' possession solely because of a deprivation of Plaintiff's property without due process of law; *and*

(b) Defendants' knowingly leveraged that condition, conditioning return of Plaintiff's property on a general release Plaintiff had no reasonable alternative but to accept, given perishable inventory, confirmed catering contracts, and continuing personal liability on leased equipment.

67. The Settlement Agreement is voidable for fraud because it recites that the undersigned "have been represented by counsel," which is false as to Plaintiff, and which Defendants knew to be false.

68. The Personal Guaranty was procured by the same misrepresentations described in Count Four and is subject to the same infirmities.

69. Plaintiff seeks a declaratory judgment that the Settlement Agreement is voidable and unenforceable as against him, that it does not release or bar any claim asserted herein, and that the Personal Guaranty is voidable and unenforceable as procured by fraud.

**COUNT FOUR**

**FRAUDULENT INDUCEMENT**

**(Against J&M REALTY SERVICES and the EDELMAN Defendants)**

70. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

71. Defendants represented to Plaintiff, through public signage advertising a "TURN-KEY RESTAURANT FOR LEASE" and through oral representations, that the premises were ready for immediate food-service operation.

72. In fact, the premises had concealed defects that were peculiarly within Defendants' knowledge: prior-tenant Consolidated Edison arrears that precluded gas service absent payment of concealed debt; the absence of a Department of Buildings commercial kitchen permit; and a dangerously defective exhaust system. See *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959).

73. These misrepresentations were directed at inducing Plaintiff personally to execute the Personal Guaranty pledging his individual assets and Social Security Number.

74. Defendant DAVID EDELMAN's payment of $1,000 to Plaintiff's contractor for damage from an unauthorized basement entry is an admission of knowledge of the premises' condition and of Defendants' conduct in connection with the utilities.

75. Plaintiff relied on these misrepresentations to his detriment, personally guaranteeing obligations and investing personal and borrowed funds, including the $312,000 SBA EIDL personally guaranteed by Plaintiff.

**COUNT FIVE**

**CONVERSION**

**(Against J&M REALTY, the EDELMAN Defendants, BENJAMIN NOREN, and DAVIDOFF HUTCHER & CITRON LLP)**

76. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

77. The personal property described in Section IV.A was Plaintiff's personal property, and he had a superior right to possession.

78. Plaintiff's absence from the premises was involuntary and caused by state-actor misinformation, not voluntary relinquishment. This case is distinguishable from *Elias v. Ferri*, 32 Misc. 3d 1208(A) (Sup. Ct. Queens Cnty. 2011), in which tenants absented themselves with full and accurate knowledge of the timeline. Plaintiff had neither.

79. Defendants intentionally exercised dominion over Plaintiff's personal property in a manner inconsistent with his rights, including by conditioning its return on a waiver of

Plaintiff's legal rights, obstructing and delaying retrieval for approximately four months, and depriving Plaintiff of its use during that period.

80. Defendant DAVIDOFF HUTCHER & CITRON LLP is liable for the conversion described herein, which was committed by its partner, Defendant BENJAMIN NOREN, within the scope of his employment and in the ordinary course of the firm's business. *See* N.Y. Partnership Law § 26 (*respondeat superior*).

81. Demand and refusal are established by the August 1, 2024, email from BENJAMIN NOREN and subsequent communications.

82. Plaintiff's damages include the four-month loss of use of his property, storage and moving expenses, damage and deterioration, lost perishable inventory, and lost business during the deprivation period, in an amount to be determined at trial.

**<u>COUNT SIX</u>**

**DECEPTIVE BUSINESS PRACTICES**
**(N.Y. Gen. Bus. Law § 349)**
**(Against J&M REALTY SERVICES and the EDELMAN DEFENDANTS)**

83. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

84. Defendants engaged in deceptive acts and practices in the conduct of business, trade, or commerce, including public advertising of a "TURN-KEY RESTAURANT FOR LEASE" that concealed material defects within Defendants' knowledge. The signage was displayed on the premises to the general public—visible to all passersby—and was not directed solely at commercial purchasers.

85. These acts were consumer-oriented in that they were directed at the public marketplace through prominent public signage, and were directed at inducing a commercial tenant to enter a lease and personally guarantee its obligations.

86. Plaintiff was deceived and injured as described above.

**COUNT SEVEN**

**TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE BUSINESS RELATIONS**

**(Against J&M REALTY and the EDELMAN Defendants)**

87. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

88. Plaintiff had existing contractual and business relationships, and prospective relations, with catering platforms including Cater2.me, CaterCow, ezCater, Fooda, FoodFleet, Restaurant Associates/Foodworks, and Sharebite, through which Plaintiff had been approved to serve Fortune 500 corporate clients, including a confirmed CNN engagement scheduled for July 26, 2024 valued at $2,320.

89. Defendants knew of these relationships and intentionally interfered with them by rendering Plaintiff unable to perform—through the eviction, the four-month retention of his equipment and recipe materials, and the obstruction of retrieval.

90. Plaintiff lost confirmed engagements and was terminated or suspended as a vendor from these platforms as a direct result of Defendants' interference, in an amount to be determined at trial.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a) Declare the August 6, 2024 Settlement Agreement voidable and unenforceable as against Plaintiff, and declare that it does not bar any claim asserted herein;

(b) Declare the Personal Guaranty voidable and unenforceable as procured by fraud;

(c) Enter judgment in favor of Plaintiff and against Defendant GEORGE ESSOCK JR. on Count One;

(d) Enter judgment in favor of Plaintiff and against Defendant THE CITY OF NEW YORK on Count Two;

(e) Enter judgment in favor of Plaintiff and against the remaining Defendants on Counts Three through Seven, in an amount to be determined at trial, including compensatory damages for lost use of property, lost profits and business relations, storage and moving costs, property damage, perishables, personal guaranty exposure, and all other injuries described herein;

(f) Award Plaintiff punitive damages against the individual Private Defendants on the state-law counts where permitted by law;

(g) Award Plaintiff costs, disbursements, and reasonable *pro se* filing costs; *and*

(h) Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues as a matter of right.

Dated: September 8, 2026
Brooklyn, New York

Respectfully submitted,

/s/***Edward B. Hubbuch***

394 Lincoln Place #A5
Brooklyn, New York 11238
bhubbuch@gmail.com

Plaintiff, *pro se*

TO: LARRY HUTCHER, Esq.
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
lkh@dhclegal.com

*Counsel for Defendants* DHC LLP, J&M REALTY SERVICES CORP., JERRY EDELMAN, DAVID EDELMAN, and BENJAMIN NOREN

DAVID B. TENDLER, Esq.
Cornicello, Tendler & Baumel-Cornicello, LLP
29 Broadway, 25th Floor
New York, New York 10006
dtendler@ctbclaw.com

*Counsel for Defendant* GEORGE ESSOCK JR.

ZACHARY KALMBACH, Esq.
JOANNE LING, Esq.
The City of New York, Law Department
100 Church Street
New York, New York 10007
zkalmbac@law.nyc.gov

*Counsel for Defendant* THE CITY OF NEW YORK